IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MONIQUE KELLY,     *

    Plaintiff,     *

    v.     *     Civil Action No. RDB-18-0049

NANCY A. BERRYHILL,     *

    Defendant.     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Monique Kelly, filed this Complaint against Defendant Nancy A. Berryhill in her capacity as the Acting Director of the Social Security Administration ("SSA," "Administration," or "Defendant"), asserting a claim for retaliation and harassment based on a prior claim (the "claim") to the U.S. Equal Employment Opportunity Commission ("EEOC"), a claim for harassment based on disability, and a claim for failure to provide reasonable accommodations. (Corrected Compl. ECF No. 2). Currently pending before this Court is Defendant's Motion to Dismiss for Lack of Jurisdiction, for Failure to State a Claim, or Alternatively, For Summary Judgment. (ECF No. 19). The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). The Administration's motion shall be treated as a Motion to Dismiss. For the reasons stated below, that motion, (ECF No. 19), is GRANTED and this case is DISMISSED WITH PREJUDICE.

## BACKGROUND

When reviewing a Motion to Dismiss, this Court accepts as true the facts alleged in Plaintiff's Complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (2011). This Court must then construe those facts in the light most favorable to Kelly. *See Edwards v. City of Goldsboro*, 178

1

F.3d 231, 244 (4th Cir. 1999). Plaintiff suffers from urinary track and gynecological complications, and Post-Traumatic Stress Disorder ("PTSD") arising from her combat service in Bosnia. (Corrected Compl. ECF No. 2 at ¶ 9). She began working for the SSA as a claims examiner in 2009. (*Id.* at ¶¶ 8, 11). Plaintiff alleges that she has been the victim of numerous instances of abuse and harassment. (*Id.* at ¶ 13). In May 2012, Plaintiff was "made to parade before [her] managers . . . to determine if [her] dress was appropriate." (*Id.* at ¶ 12). This "parade" and other instances of "harassment and failure to provide reasonable accommodations based on her disabilities" prompted her to file her first EEO charge against the Defendant in 2012. (*Id.* at ¶¶ 7, 13). In April 2016, Plaintiff filed her second EEO charge against the Administration, the exact bases of which remain unclear, but the pleadings indicate that the second charge was advanced on similar grounds. (*Id.* at ¶¶ 7, 14-20). It appears from the record that both charges remain pending. Ultimately, there was a third charge resulting in the Complaint in this case.

Plaintiff's Complaint alleges numerous grounds for her claims. Plaintiff continued to work under a supervisory manager, Ava Comer, as to whom she filed he two previous charges. (*Id.* at ¶ 20). During 2015, she was wrongfully accused of breaching Personal Identifier requirements. (*Id.* at ¶ 36). Kelly contends that her "voluntary leave transfer program ("VLTP") has been continuously clobbered by the" SSA in that she was removed from an alleged list on a consistent basis and this prevented her from taking a form of leave. (*Id.* at ¶ 22). In March 2016, Plaintiff's requests to be relocated to another building were denied. (*Id.* at ¶ 21). In February 2016, Plaintiff received her Performance and Communications System ("PACS") assessments two weeks late. (*Id.* at ¶¶ 27-28). Plaintiff's PACS gave her a 3.5 rating, despite being promised a 4. (*Id.* at ¶ 29). In March of 2016, Ms. Comer called Plaintiff a "Easter Killer." (*Id.* at ¶ 35). On August 2, 2016, a fellow co-worker yelled at Plaintiff and Ms. Comer told that co-worker that Plaintiff "was not a

2

team player" and for him to "just do the work" that prompted the situation. In December 2016, Ms. Comer grabbed or slapped Plaintiff's wrist, told her to turn around and speak with her, and "demanded that she present to the entire module a speech on how [Plaintiff's] PTSD worked and how it affected her and the Module." (*Id.* at ¶ 37). On December 16, 2016, she was not invited to a work luncheon. (*Id.* at ¶ 50). Plaintiff also claims that on January 11, 2017, Ms. Comer touched Plaintiff's head, slapped her forehead, and said that she was using her healing hands to cure Plaintiff of her ales. (*Id.* at ¶ 23).

As for her claim for refusal to grant a reasonable accommodation, Plaintiff advances that the Administration knew of her disability since her hiring. (*Id.* at ¶ 10). She allegedly requested reasonable accommodation sometime in mid-2012, July 2016, and again in August 2016 through her Employee Assistance Program ("EAP") counselor. (*Id.* at ¶¶ 38-39). An additional request was made through the online reasonable accommodation portal on November 8, 2016. (*Id.*). A reasonable accommodation of working from home three-days a week was "provisionally approved," and its temporary nature "causes tremendous stress" to Plaintiff. (*Id.* at ¶¶ 39-40). Plaintiff contends that she can successfully complete her job duties from home. (*Id.* at ¶ 41).

The underlying instant charge against Defendant was filed on November 23, 2016. (ECF No. 1-2). On January 6, 2017, the SSA processed Kelly's complaint and opened an investigation into: 1) "Whether the Agency subjected [Plaintiff] to non-sexual harassment based on disability (mental) and retaliation (prior EEO activity) beginning August 2, 2016 and ongoing with respect to working conditions;" and 2) "Whether the Agency failed to provide [Plaintiff] with a reasonable accommodation based on disability (mental) beginning January 12, 2016 and continuing." (ECF No. 19-7). After its investigation, a report was issued on May 12, 2017. (ECF No. 19-8). On August 7, 2017, a final administration decision was issued which found that the SSA took

3

reasonable action to accommodate Kelly's disability and did not discriminate against her based on disability or past protected conduct. (ECF No. 19-9 at 1, 18, and 20).

On September 8, 2017, over one year later, Plaintiff brought this instant suit[1] against the SSA alleging retaliation harassment (Counts I); a claim of harassment based on disability (Count II); and denial of reasonable accommodation for a disability pursuant to Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §·791. (ECF No. 2 at ¶¶ 49-62). Currently pending before this Court is Defendant's Motion to Dismiss for Lack of Jurisdiction, for Failure to State a Claim, or Alternatively, For Summary Judgment. (ECF No. 19).

## STANDARD OF REVIEW

A motion to dismiss for failure to exhaust administrative remedies is governed by Federal Rule of Civil Procedure 12(b)(1), which requires dismissal when the court lacks subject matter jurisdiction. *Khoury v. Meserve*, 268 F.Supp.2d 600, 606 (D. Md. 2003); *Clarke v. DynCorp Intern. LLC*, 962 F.Supp.2d 781, 786 (D. Md. 2013). The plaintiff bears the burden to show that subject matter jurisdiction exists. *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008). A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6), which authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing

---

[1] Originally in the District Court for the District of Columbia but transferred to this Court upon joint motion on January 8, 2018 (ECF Nos. 10-12).

4

that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

While ruling on motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines v. Calley Cmty. Servs. Bd.*, 822 F.3d 159, 166-67 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation and emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

Accordingly, in ruling on Defendant's Motion to Dismiss, this Court will consider Plaintiff's underlying EEOC Charge and its related documents. *See Bowie v. Univ. of Maryland Med. Sys.*, No. ELH-14-03216, 2015 WL 1499465, at *3 n.4 (D. Md. Mar. 31, 2015) ("Courts commonly consider EEOC charges as integral to a plaintiff's Complaint, *i.e.*, effectively a part of the pleading, even if the EEOC charge is not filed with the Complaint." (citations omitted)).

**ANALYSIS**

**I.  Rule 12(b)(1) Motion to Dismiss**

The Social Security Administration asserts that Kelly's retaliation and disability-based discrimination claims, which presumably are advanced pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-16, and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791, should be dismissed because she failed to exhaust her administrative remedies and thus this Court does not have subject matter jurisdiction. (ECF No. 19). As an initial matter, the Rehabilitation Act controls because all of Plaintiff's claims arise from her disabilities. *Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 491 (D. Md. 2013). Nevertheless, claims under the Rehabilitation Act are "governed by the exhaustion requirements and filing procedures applicable to Title VII claims against federal employers." *Id.*

Before bringing such claim in federal court, a plaintiff must exhaust administrative remedies by filing a "charge" with the EEOC or another appropriate agency. 42 U.S.C. § 2000e-5(e)(1). The charge must be filed within a specified time "after the alleged unlawful employment practice occurred." *Id.* In Maryland, a deferral state,[2] a claim of discrimination must be filed within 300 days of the alleged discriminatory action. 42 U.S.C. § 2000e-5(e)(1). "If a charging party fails to comply with this statutorily mandated filing period, alleged discriminatory acts which occurred more than 300 days prior to the filing of the EEOC charge may not subsequently be challenged in a Title VII suit." *Van Slyke v. Northrop Grumman Corp.*, 115 F.Supp.2d 587, 592 (D. Md. 2000) *aff'd*, 17 F. App'x 154 (4th Cir. 2001). If the charge is dismissed, a plaintiff has

---

[2] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). Maryland is classified as a deferral state because the Maryland Commission on Human Relations constitutes a state agency that may provide relief from discrimination.

ninety days to file an action in court. 42 U.S.C. § e-5(f)(1). Most importantly, a plaintiff's suit is limited to the grounds asserted in the underlying charge. *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained" in the subsequent lawsuit. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996). A "plaintiff has failed to exhaust administrative remedies where a charge of discrimination references 'different time frames, actors, and discriminatory conduct' than the allegations found in a complaint." *Wright v. Kent Cty. Dep't of Soc. Servs.*, No. ELH-12-3593, 2014 WL 301026, at *11 (D. Md. Jan. 24, 2014) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005)). Failing to exhaust administrative remedies deprives this Court of subject matter jurisdiction over the all incidents and claims alleged. *Jones*, 551 F.3d at 300 (2009).

Kelly filed the charge in question on November 23, 2016, barring any retaliation or disability-based allegations of harassment occurring more than 300 days prior to this date, i.e. before January 28, 2016. (ECF No. 1-2). Furthermore, the scope of the charges, and therefore the subsequent investigation, is narrower than Plaintiff's arguments would assert. Within her charging complaint, Plaintiff rehashes some past incidents that have allegedly occurred since 2009. (ECF No. 19-6). In doing so, however, Plaintiff couches many of the past conduct as pending resolution in one of the two outstanding charges. (*Id.* at 4 ("I have had a trail [sic] for three days July, 2015, and it is still pending. I had to include [information concerning past allegations] because it has been ongoing.")). Additionally, Plaintiff's November 2016 charge states that "[t]he ADR was not settled, and I am filing for a formal EEO complaint based on the following incidents." (ECF No. 19-6 at 6). The charge then goes on to detail the August 2, 2016 incident with Mr. Thompson and

7

how, despite her disability, the SSA allegedly refuses to give her a reasonable accommodation. (ECF No. 19-6).

Therefore, the Administration correctly interpreted the charge as narrowly pertaining to specific incidents and its subsequent investigation only concerned: (1) Plaintiff's alleged non-sexual harassment based on disability (mental) and retaliation (prior EEO activity) between August 2, 2016 and May 12, 2017, with respect to working conditions; and (2) the alleged failure to provide Plaintiff with a reasonable accommodation beginning January 12, 2016. (ECF Nos. 19-7 and 19-9).

Plaintiff now contends that the SSA consented to combining the April 2016 charge with the November 2016 charge currently before this Court. A review of the emails Plaintiff relies on to advance this argument, (ECF No. 20-1), does not support this contention. The emails simply show that the SSA (and AUSA) would not object to the joining of the two cases. Despite this, Plaintiff never moved to do so. Other than the email exchange, nothing within the record indicates that Plaintiff challenged the investigation's scope. *See Sloop v. Memorial Mission Hospital, Inc.*, 198 F.3d 147, 149 (4th Cir.1999) (plaintiff who took no official action to amend the charge of discrimination failed to exhaust administrative remedies with respect to claim omitted from the original charge).

This Court only has subject matter jurisdiction over claims of retaliatory and disability-based harassment from August 2, 2016 to May 12, 2017 in terms of working conditions, and over incidents concerning reasonable accommodations since January 12, 2016. *See Sillah v. Burwell*, 244 F. Supp. 3d 499, 507 (D. Md. 2017) ("Importantly, the scope of the plaintiff's federal causes of action is circumscribed by the contents of the formal administrative complaint as identified and investigated by the EEOC or its County counterpart."). The only exhausted allegations properly

before this Court are those concerning Mr. Thompson yelling on August 2, 2016, Ms. Comer grabbing or slapping Plaintiff's wrist and pressuring her to speak to the Module about her PTSD in December 2016, Plaintiff not being invited to the luncheon in December 2016, and Ms. Comer touching Plaintiff's head, slapping her forehead, and saying she was using her healing hands to cure Plaintiff of her "ales" in January 2017.

## II. Rule 12(b)(6) Motion to Dismiss

The SSA argues that even if this Court has subject matter jurisdiction over all the incidents alleged, Kelly still fails to state claims upon which relief can be granted. As an initial matter, it is unclear what claims she is advancing. For instance, claim one of the Complaint appears to advance a claim of Title VII retaliation, but in doing so also references a hostile work environment. Similarly, claim two advances a claim of harassment based on disability, references Title VII damages, but also references a hostile work environment. (ECF No. 2 at 6-7). The briefings address this confusion by treating the inclusion of hostile work environment as a separate claim. (ECF Nos. 19-1 – 21). While hostile work environment is outside of the underlying charge's scope, this Court will nevertheless address it as a separate claim.[3]

Even if the Court had subject matter jurisdiction to review Plaintiff's Complaint in its entirety, the Complaint would still fail to state plausible claims for which relief can be granted. Each possible claim is reviewed in turn.

### A. Retaliation

As explained above, claims of retaliation stemming from complaints of discrimination based on disability are governed by the Rehabilitation Act, but are assessed under the same framework used in assessing Title VII retaliation claims. *Wonasue*, 984 F. Supp. 2d at 491. To

---

[3] Notably, Plaintiff is not *pro se*. Therefore, this Court's willingness to construe the Complaint is limited.

9

establish a *prima facie* case of retaliation in violation of the Rehabilitation Act, a plaintiff must show that "(1) she engaged in a protected activity; (2) the [employer] took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the adverse action." *Id.* (quoting *Works v. Colvin*, 519 Fed. Appx. 176, 186 (4th Cir.2013)).

The standard for "adverse employment action," the second element of the *prima facie* case, is more lenient for retaliation claims than for substantive discrimination claims. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ("[T]he antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."). A plaintiff need only show that the challenged action "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotation marks and citations omitted). "Even with this lower bar, none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee 'AWOL'; or issuing a personal improvement plan, an 'Attendance Warning,' a verbal reprimand, 'a formal letter of reprimand,' or 'a proposed termination.'" *Wonasue*, 984 F. Supp. 2d at 492 (quoting *Rock v. McHugh*, 819 F.Supp.2d 456, 470–71 (D. Md. 2011)). All in all, an adverse employment action ranges from those that dissuade others from filing charges to those that impact one's job title, salary, benefits, hours, or some other material aspect of one's employment. *See, e.g., Boone v. Goldin*, 178 F.3d 253 (4th Cir.1999) (explaining that discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion are typical adverse employment actions).

Ultimately, Title VII and the Rehabilitation Act are not "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). The

anti-retaliation provisions protect individuals "from retaliation that produces an injury or harm," but not from "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern*, 548 U.S. at 67–68.

The SSA does not dispute that Kelly engaged in protected activity. It does, however, argue that Plaintiff fails to sufficiently allege that an adverse action occurred or any causal connection between the alleged harassment and Plaintiff's past protected conduct. (ECF No. 19-1). Plaintiff seemingly concedes this point. (ECF No. 2). Instead, Plaintiff's opposition focuses on the existence of a hostile work environment, which as discussed above, will, as it should, be evaluated as wholly separate claim. Nevertheless, the Complaint does not allege any change to her employment status, nor anyway another may have been dissuaded from participating gin protected activities.

Even if there was an adverse action, Kelly fails to advance facts sufficient to show a plausible causal connection. Other than facts concerning the Administration's knowledge of the charges and the timeline of events, nothing lends plausibility to Plaintiff's assertion that Defendant's conduct was the result of retaliatory animus. While temporal proximity can lend to causation's plausibility, nothing from this case would cause the Court to find so here. Plaintiff has submitted three separate charges alleging harassment via numerous incidents over the span of six years. After Plaintiff's April 2016 charge, no incidents are alleged until the conflict with Mr. Thompson in August 2016. After Plaintiff's third charge, as prompted by the incident with Mr. Thompson, no incidents are alleged until another four months later in December. Such temporal patterns, do not themselves make a claim plausible. *See Pascual v. Lowe's Home Centers, Inc.*, 193 Fed. Appx. 229, 233 (4th Cir. 2006) (finding that a period of three to four months "is too long

to establish a causal connection by temporal proximity alone."). Therefore, Plaintiff failed to plead a plausible claim for which relief can be granted under a substantive retaliatory analysis.

### B. Harassment based on Disability

Plaintiff's second claim is for "harassment based on disability." (ECF No. 2). The Court interprets this claim also pursuant to the Rehabilitation Act which prohibits a federal agency from discriminating against an "otherwise qualified individual with a disability ... solely by reason of her or his disability." 29 U.S.C. § 794(a). To establish a *prima facie* case for harassment based on disability under the Rehabilitation Act, "Plaintiff must show that she: (1) was disabled or perceived as being disabled by her employer; (2) was 'otherwise qualified' to perform the work; and (3) was discriminated against due to her disability." *Berkner v. Blank*, CIV.A. DKC 12-1390, 2013 WL 951562, at *3 (D. Md. Mar. 11, 2013), *aff'd sub nom. Berkner v. Pritzker*, 561 Fed. Appx. 279, 2014 WL 1197067 (4th Cir. 2014) (quoting *Davis v. Univ. of N.C.*, 263 F.3d 95, 99 (4th Cir.2001)).

The Administration disputes that any alleged discrimination was due to her disability. Like the claim for retaliation above, Plaintiff's opposition to this argument asks this Court to assume discrimination was disability based because she is disabled, and Defendant knew of her disability. Such an argument, however, asks this Court to assume the most important element of a claim for disability-based harassment — that the harassment was *because* of her disability. The Complaint alleges that Plaintiff "suffered direct discrimination as a result of her disability" and that the Defendant treated Plaintiff "differently because of her disability." (ECF No. 2 at ¶ 50). Both statements are conclusory and do not advance factual allegations for proper consideration. Plaintiff's Complaint also points to the alleged incidents where she was not invited to the SSA luncheon, pushed to speak on her PTSD to the module, told she was not a team player, that she

was generally denied opportunities to work in groups, and that her PACs were late. (*Id.*). None of the above actions can be reasonably interpreted to have been taken because of an animus towards Plaintiff's disability. The only incident that even concerns Plaintiff's disability is her being pressured to speak about her PTSD. While the incident may concern her disability, nothing as articulated by the Plaintiff leads this Court to interpreted that the incident amounted to discrimination, let alone discrimination caused specifically because of animus towards Plaintiff's disabilities. As such, Plaintiff has failed to plead a plausible claim for which relief can be granted under a substantive disability-based discrimination analysis.

### C. Hostile Work Environment

Despite not clearly being advanced as a claim within the Complaint, Plaintiff's claims both assert that the harassment based on Plaintiff's protected activities and disability created "an environment so hostile, that no reasonable employee could succeed in such a situation." (ECF No. 2 at 6 and 7). The SSA interpreted this as also advancing a separate claim of discrimination based on a hostile work environment and devoted much of its briefing accordingly. (ECF No. 19-1 at 14-20). Defendant's interpretation was proven accurate by Plaintiff only arguing that its claims for retaliation and disability-based harassment are based on a theory of hostile work environment. (ECF No. 20 at 5-8). Plaintiff fails to plead a plausible claim for which relief can be granted. To establish a *prima facie* case of hostile work environment, the plaintiff must show she was the subject of conduct that was (1) unwelcome, (2) based on her past protected activities or disability, (3) subjectively and objectively severe or pervasive enough to alter her conditions of employment and create an abusive atmosphere, and (4) imputable to the employer. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir. 2001).

Defendant does not contest the first and fourth elements, but does, as it did before, argue that none of the alleged incidents were based on her past protected activities. Nothing alleged shows that the conduct plausibly arises from an animus towards past protected activities or Plaintiff's disabilities. Notwithstanding Plaintiff's inability to meet element two, Defendant further challenges Plaintiff's ability to show the third element. "Establishing the third element requires that the plaintiff show that the work environment was not only subjectively hostile, but also objectively so." *Bonds v. Leavitt,* 629 F.3d 369, 385 (4th Cir. 2011). In other words, a plaintiff must demonstrate that she perceived the environment to be hostile, *and* that the conduct was such that a reasonable person in the plaintiff's position would have felt the same way. *EEOC v. Sunbelt Rentals, Inc.,* 521 F.3d 306, 315 (4th Cir. 2008). The standards for judging hostility are "sufficiently demanding to ensure that Title VII does not become a general civility code." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S. Ct. 2275 (1998) (internal quotation marks omitted). "In applying these factors, this Court has recognized that the standard for proving an abusive work environment is intended to be a very high one." *Wang v. Metro. Life Ins. Co.,* 334 F.Supp.2d 853, 864 (D. Md. 2004) (internal quotation marks omitted).

To determine whether a reasonable person would perceive workplace harassment to be severe and pervasive, the Court considers a number of factors, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 178. The conduct at issue must be far more severe than that of "a merely unpleasant working environment," *Hopkins v. Balt. Gas & Elec. Co.,* 77 F.3d 745, 753 (4th Cir.), *cert. denied,* 519 U.S. 818 (1996), and "must be sufficiently pervasive so as to become diffuse throughout every part of the work environment in which plaintiff functioned." *Romeo v. APS*

*Healthcare Bethesda, Inc.*, 876 F.Supp.2d 577, 593 (D. Md. 2012) (citations omitted). Courts "usually only allow hostile work environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent or threatening nature, or has impacted the employee's work performance." *Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 776 (D. Md. 2010).

Despite Plaintiff's subjective belief, the alleged incidents fail to depict an environment that is objectively severe or pervasive enough to state a plausible claim for hostile work environment. Despite Plaintiff's allegation that "numerous issues of abuse and alleged harassment" occurred, the universe of incidents that an objectively reasonable employee could interpret as discriminatory is small. Plaintiff continues to work under a supervisory manager against whom she has filed charges and was allegedly accused of breaching interoffice policies. Kelly's ability to take leave was allegedly altered and she was not permitted to move to another building. She received her PACs late and with a lower score than anticipated. Kelly was once sent home when believed to be suicidal. She was also once called an "Easter Killer." Mr. Thompson yelled at her and Ms. Comer said she was not "a team player." Then Ms. Comer grabbed or slapped her wrist and "demanded that she present to the entire module a speech on how [Plaintiff's] PTSD worked." Kelly was not invited to a luncheon, and Ms. Comer once touched Plaintiff's head, slapped her forehead, and said she would cure Plaintiff of her ails.

"[I]n order to be actionable, the harassing 'conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment.'" *Sunbelt Rentals, Inc.*, 521 F.3d at 315 (quoting *Faragher*, 524 U.S. at 788). As put by the Fourth Circuit, "complaints premised on nothing more than rude treatment by coworkers, callous behavior by one's superiors, or "a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII." *Id.* at 315-16 (internal quotations and citations omitted).

It is undeniable that the allegations that Ms. Comer physically touched, slapped, grabbed, or smacked Plaintiff, if true, reflect behavior that is woefully inappropriate and intolerable in the work place. Nevertheless, when taken as a whole over the time involved, the incidents alleged do not indicate that Plaintiff suffered through retaliatory and disability-based harassment "crude, persistent, demeaning, unrelenting, and widespread" enough to plausibly result in an objectively hostile work environment. *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 984 (4th Cir. 1997). The incidents were isolated, over a lengthy period of time, and with nothing indicating that the conduct arose from any sort of hostility or animus traceable to Plaintiff's past protected activity or disabilities. *See Causey v. Balog*, 162 F.3d 795, 801, 1998 WL 870185 (4th Cir. 1998) (allegations of ill treatment at the hands of supervisors insufficient to make out hostile work environment claim where supervisor "never made any derogatory comments about [plaintiff's] race or age, and nothing about his conduct suggests it was based on these factors").

Even if the Court considers the entire scope of the Complaint Plaintiff's claims for retaliation, disability-based harassment, and hostile work environment fail to state claims that are plausible on their face and therefore must be dismissed.

### D. Reasonable Accommodation

Plaintiff's final claim is for "denial of reasonable accommodation." (ECF No. 2 at 8). Under the Rehabilitation Act, to establish a claim for a failure to accommodate, Plaintiff must show that (1) she has a disability; (2) Defendant knew of the disability; (3) with reasonable accommodations she is otherwise qualified to perform the essential functions of the position; and (4) Defendant refused to make such reasonable accommodations. *Lewis v. Gibson*, 621 Fed. Appx. 163, 164 (4th Cir. 2015). The SSA argues that this last claim too must fail because it never refused to make a reasonable accommodation. Kelly argues that Defendant's failure to make the

reasonable accommodation permanent or to provide a scanner constitutes refusal. She also asserts that Defendant knew of her need for an accommodation much earlier and the delay constitutes refusal. Both arguments are without merit.

First, under the Rehabilitation Act, the term "reasonable accommodation" may include, among other things, "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1614.203(b). "An employer is not obligated to provide a qualified individual with the accommodation of the employee's choice upon demand; the employer must only provide a reasonable accommodation." *Dahlman v. Tenenbaum*, CIV.A. DKC 10-2993, 2011 WL 3511062, at *13 (D. Md. 2011). Kelly requested an accommodation of permanent teleworking. The SSA responded by offering her an accommodation of teleworking three days a week on a provisional basis. This accommodation is entirely reasonable under the circumstances. It gives Plaintiff the opportunity to work from home, to come back to the office to gather supplies or attend necessary meetings, and most importantly the opportunity for reexamination on a regular basis. As the telework is for only three days a week, Plaintiff is still able to complete her work duties, and particularly those requiring use of a scanner, on those days she is within the office. Kelly maintains that she is entitled to permanent accommodation, but this is counter to the collaborative and interactive process contemplated by the Rehabilitation Act. 29 C.F.R. § 1630.2(*o*)(3).

Second, Kelly's arguments concerning notice and equating delay to refusal are unpersuasive. The prior alleged requests for reasonable accommodation appear to have been made

to her Employee Assistance Program ("EAP") counselor in January 2016, who does not have the authority provide accommodations. According to the Administration Decision, this counselor then directed Plaintiff to the online portal for requesting such accommodations. (ECF No 19-9 at 12). The decision also indicates that reasonable accommodations were also discussed as potential remedies for her prior charges. (*Id.*). Plaintiff avers that she also requested a reasonable accommodation in June 2016. Ultimately, Plaintiff asks this Court to find that an allegation that she had to wait six months for a reasonable accommodation is insufficient to state a plausible claim for relief. In January 2016 she knew of how she could request a reasonable accommodation. Even if she then brought the idea up in passing between January 2016 and November 2016, nothing prompts this Court to then place any fault of delay on the Defendant. Had Plaintiff followed the EAP counselor's instruction it is reasonable to assume that no such delay would have ever occurred. Furthermore, the Court fails to see how any such delay would then constitute a refusal, especially in light of an accommodation being promptly granted once requested properly. Therefore, this Court finds that Plaintiff failed to advance a plausible claim of refusal to grant a reasonable accommodation upon which relief may be granted.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss for Lack of Jurisdiction, for Failure to State a Claim, or Alternatively, For Summary Judgment, (ECF No. 19), treated as a Motion to Dismiss, is GRANTED and this case is DISMISSED WITH PREJUDICE. A separate Order follows.

Dated: March 20, 2019

_____
Richard D. Bennett
United States District Judge